Good morning, your honors. May it please the court. Elizabeth Richardson-Royer on behalf of the petitioner. I plan to reserve two minutes, but I'll watch the clock. At Matthew Manzano's capital trial, the prosecutor falsely told the jury just before deliberation that the victim's blood was found on Manzano's pants. The parties agreed that this was flatly false and that, in fact, no physical evidence tied Mr. Manzano to what happened inside the house. Now because the district court below properly found that trial counsel's failure to adequately challenge this false statement was deficient performance, I plan to focus this morning on the question of prejudice to explain why the false statement about the victim's blood very likely changed the outcome of trial and why the state court's decision to the contrary was unreasonable. There are at least three reasons why the state court's prejudice determination was unreasonable. The first, and I think most important, is that the state court improperly credited as credible the inconsistent and biased testimony of the informant. So what was the state court supposed to do with the Mr. Regalado, is that what it was? Mr. Regalado. What were they supposed to do with his testimony? They were supposed to look at his testimony and consider whether, had it not been corroborated by this very damning physical evidence, the jury might have looked at the internal inconsistencies within it, the inconsistencies between his testimony and the other evidence. Any other evidence that in any way corroborates Regalado's testimony? There is some other evidence that corroborates it and there also is evidence that doesn't. So corroborating it is the fact that Mr. Manzano went to the hospital, a bullet was recovered from his back that had been fired by a weapon that was also used in this crime. But that doesn't tell us that he... On the same night? On the same night. Certainly it suggests that he was involved, right? But it doesn't show that he fired a weapon, that he was inside the house as opposed to a dispute happening outside. And in fact, there's evidence suggesting that only one person went in the house and that person very well could have been Eric Estrada. The eyewitnesses, when they first talked to police, described one person in the house. The neighbor across the street who witnessed somebody coming out of the house said one person came out of the house. Describe that person initially as 5'6"-5'8", wearing white shoes. That matches Eric Estrada. Matthew Manzano was 6'3", he was wearing black shoes on the night of the crime. So the jury could have been confused about if Manzano was there, if he drove Eric Estrada to the crime scene, if they had a dispute. There was evidence they were arguing. But the jury didn't know, unless it saw that there was blood from the victim on his pants, that he was in the house. But there was also... Okay, so you agree that he was there? I don't agree that he was there, but I think there was evidence that a jury could... There was evidence from which the jury certainly could. They could find the footprints, the fact that he was shot by the same gun, the fact that he didn't... His own statement about how he was shot wasn't backed up. Certainly. And so, that's not to say that the jury couldn't... There wasn't sufficient evidence for the jury to convict him. But the jury very well could have had a reasonable doubt about whether it was him or Eric Estrada or somebody else who went into the house and killed these victims. Except, the prosecutor, when he told the jury that the victim's blood was found on Mr. Manzano's pants, I thought that... He didn't say... He actually didn't say blood, did he? I thought he said DNA. DNA. But the testimony from the DNA expert was that she tested blood found on the pants. And so it was blood that they were testing. She was pretty clear in her testimony, though, that everybody else was excluded, correct? She was clear in her testimony. And so, to the extent that the jury... Even the prosecutor, at the beginning of the argument, at the beginning of the case, when he was giving his opening statement, said, you know, the DNA is not going to show anything. And if he had maintained that position, we wouldn't have a problem here. But what happened... When he did his closing argument, he also said, at the beginning, that he downplayed the DNA, correct? He didn't downplay it when he came back. And what he actually did was, if you look at the order of his argument, he went through the evidence piece by piece. And for the first five pieces of evidence, including the bullet recovered, including the Regalado's testimony, he said, this isn't enough for you to convict. And the moment he gets to the DNA evidence, this fake evidence of the victim's blood on Mr. Manzano's pants, all of a sudden we have enough. All of a sudden you should convict. So there was an objection at that point? There was an objection. And what do you make of the judge's response? I think the judge's response actually made it substantially worse. Why? Because the judge said... So the prosecutor said the victim's DNA was found on his pants. Objection, Your Honor, that wasn't the evidence. And the judge said, on his pants or on his shoes, which strongly suggested to the jury and anyone else listening that it was clear there was DNA found on Mr. Manzano somewhere. It just wasn't, you know, whether it was his shoes or his pants. The judge went on, though, to say, well, ladies and... He didn't say ladies and gentlemen, but he said, you're the triers of the fact. You determine what the facts are.  And so... What do we make of that? What I make of that is that the jury then thought, well, we might have to consider where the DNA was in Mr. Manzano, but maybe we don't care. And this court has... I mean, Judge Paez's first question was, is there any corroborating evidence of... I don't know if it's his testimony. And we've just gone through all of the corroborating evidence. There's evidence that Mr. Manzano was involved, but other than Mr. Ragalata's testimony, which differed in key respects from other evidence... Weren't there just three little... One internal consistency and two others that would easily... So the fact that it had been four years before. There are multiple inconsistencies, internally and externally. Internally, first he said that Mr. Gurule was shot in the garage. Later he said he was shot inside the house. That's a critical fact. First he said that Mr. Manzano and Mr. Estrada were talking on the phone on the whole way over. Then later he said, I don't know whether they were talking or not. He differed on where Mr. Manzano was in the jail when he told Mr. Ragalata this story, but I think the external ones are really more important. He said they ran in separate directions, but the credible eyewitness said that they got into the same vehicle. He said that the weapon was a .45. It wasn't. He said that Desiree Gallegos came running out of the kitchen, at which point Mr. Manzano supposedly ran out of the house, but she was in the living room the whole time. So these are key inconsistencies, and the jury certainly could have said, look, this guy's testimony is the only evidence that Mr. Manzano went in that house and shot these victims, and we don't believe him. Except for the fact that there was this false corroborating evidence, it's reasonably likely that the jury would have had at least a reasonable doubt. Wasn't there other evidence as well that pointed to Mr. Manzano? There was no evidence that pointed to Mr. Manzano as opposed to Mr. Estrada. Well, there was the supposed motive as well. What do we do with that? The district court, I think, properly found that any member of this gang would have had a motive, that really the person who had the biggest beef with Mr. Holguin was the person who ended up serving 19 years as a result of the hide-and-seek. But I thought Manzano had testified against Holguin. Was it Holguin? Holguin had testified, not Estrada. Holguin had testified against Manzano. Well, he actually didn't. He had owned the vehicle in a prior carjacking. He testified at the preliminary hearing of Mr. Manzano's co-defendant. And so certainly that's motive, but there's also testimony that the co-defendant in that case told Eric Estrada, this is your beef, you fix this. Because in 2003, two years after the car hijacking, it was Eric Estrada who fired a gun that got the co-defendant's parole revoked and made him go serve the 19 years. So there was a motive. Multiple people had a motive. So that alone doesn't prove that Mr. Manzano... Isn't that just saying then that this is a jury issue? I mean, there was certainly sufficient evidence from which the jury could have found him guilty. Yes. But that's not the standard. So unless... So we get down to these two words, the pants or the shirt, is really what you're getting down to. Because the judge asked a question, probably wasn't paying attention or something. Well, I think it's much more than two words, Your Honor. And I think the question is whether there's a reasonable likelihood that given the other inconsistencies at trial, the jury would have had a doubt about who it was that went in and killed these people. And this is key, key evidence. If the jury believed, because the prosecutor falsely told them that the victim's blood was on Mr. Manzano's pants, then yes, he was in the house. He fired the gun. But you have to find... I mean, it's really hard to find ineffective assistance of counsel. And he did make one objection. He objected the first time. Well, he had no reason not to object again. I mean, especially after what the trial judge said. So I think I'll reserve my 10 seconds for rebuttal. One second before you sit down. I'll give you time to offer some rebuttal. I just have one last question for you. So we're in the world of AEDPA, correct? Yes, Your Honor. All right. So when we... The Supreme Court talks about double deference, right? Yes, Your Honor. So we give a lot of deference to... When we're not in AEDPA land, we give a lot of deference to the decisions of counsel. You know, in the course, things are happening quickly. That argument was coming down, you know, it's happening, it's evolving, it's dynamic. We're giving deference just right there to counsel's actions, correct? Right, Your Honor. Okay. Then we come to AEDPA and we have to impose another level of deference. Was the state court's determination unreasonable in light of everything we've been talking about? So isn't that really the ultimate question? Even if you assume that there was deficient performance in not objecting or not advocating for a more stronger admonition to the jury. So even if you get to prejudice, the question we have to ask and answer is, was the state court of appeals decision on prejudice unreasonable under... In light of everything we've been speaking about? Yes, Your Honor. Well, I think the double deference that you're talking about goes to the issue of deficient performance, which I'm happy... It also goes to... Well, there's deference also. We have to also give deference to the state court of appeals decision on the prejudice problem. We do give deference, but not double deference on the prejudice problem. So I would just say that. But I do think the state court's decision was unreasonable in this case. And this case is very similar to a case in which this court found under AEDPA that the state court's determination on prejudice was unreasonable. In fact, it's very similar to those at issue here and that's Zapata v. Vasquez. Okay. All right. I'll give you a minute for rebuttal. Thank you. May it please the court. Vincent LaPietra on behalf of the warden. The state court reasonably determined that Mr. Manzano was not prejudiced by counsel's decision to not take additional steps to correct the prosecutor's misstatement. Let me just ask about that. In addressing the deficiency prong of Strickland, what weight should we give to the fact that the prosecutor misstated the DNA evidence during rebuttal after defense counsel's last opportunity to address the jury? Does the fact that the prosecutor again misstated the DNA evidence after defense counsel's objection was overruled, does it make this case more like Zapata? No, Your Honor. In Zapata, defense counsel took absolutely no action whatsoever, not even an initial objection. In this case, as you mentioned, counsel objected. But furthermore, the misconduct in Zapata was prejudicial and resulted in reversal. As the court of appeal noted in this case, even under state law, while the prosecutor did make a misstatement, all parties agree, it did not rise to the level of reversible error. And so failing to object and preserve the issue of prosecutorial misconduct was not prejudicial because that issue was not meritorious. All right. Thank you. Returning to- So let me ask, just to follow up on Judge Nelson's question. So it was pretty clear to everyone that the experts had testified with respect to DNA, the DNA evidence, that it was inconclusive. In fact, it ruled out anybody else but Manzano. I think you're asking about the experts' testimony. Yes. I mean, the prosecutor knew that. The prosecutor, it appears, based upon erroneous transcripts, was under the mistaken impression that there was- Well, no, but he knew that before the trial even started because he stood up there when he gave his opening statement and he said, you know, we did DNA, we did this testing. It doesn't show anything. You know, blah, blah, blah. Yes, Your Honor. He was pretty clear. And when the witnesses, when the experts got up there and testified, they were, there was no doubt in their testimony. It ruled out everybody else but Manzano. Yes, Your Honor. Right? During Voie d'Hier, the prosecutor- So what was the, I mean, I don't, you know, there, I understand in the dynamics of a trial that people can make mistakes, but this was kind of an, this was, this was, this was a pretty serious mistake. Everybody knows DNA or scientific evidence can be critical. Well, I think it's explainable in light of his apparent view that even his misstatement was not very dispositive. As he went on to say after he was overruled, he said, there was some DNA. I believe it was on the pants. It's not very, it's a, statistically, it's a very low probability match. He said one in 10 Latinos or one in 11 Caucasians. And then he said, it's certainly not enough to convict. It's not dispositive. And so even in his own view, this evidence was very slight. So perhaps he thought that he had overlooked- Well, he'd gone through, he had gone through a series of statements about what is enough and what is enough. He got to DNA and he said, well, it's not very strong. He says, but this, this might be enough or whatever. I figured he's- He said, he said it, he said it's just one more factor towards guilt. And it kind of pushed it over, right? Isn't that what he said? I don't believe he said that this would be enough to push it over. He said that this was one more factor. And perhaps- That's weird. What concerns me about this is, it seems to me, the DNA evidence concerns the key issue in this case. Does it not? And you characterized that the prosecutor's misstatements about the DNA evidence were collateral. But doesn't this go to the heart of the case? Well, he didn't tie it into any inferences. Counsel is now arguing that this showed he was in the house. But he didn't argue, the prosecutor didn't argue that this showed that Mr. Manzano was in the house. What showed that Mr. Manzano was in the house was the witness's testimony. As she said, one person was in the house and one person was in the garage. And one of the witnesses said that the person inside the house was struck by a bullet in the foot as they walked out. Obviously, there was only one person who showed up to a hospital with a bullet in their pelvis that matched one of the gunshot wounds. So that in and of itself shows that Mr. Manzano was in the house. Well, I thought the whole bit about the DNA evidence would show that the shootings took place at fairly close range. Correct? The gunman who came into the house, Mr. Manzano, fired from the foot of the sofa where Mr. Manzano was lying with his baby on his chest. And yes, you would argue that that is very close. But the prosecutor... It's reasonable to think that blood might splatter on one's pants, on one's shirt. That was not the prosecutor's argument. The prosecutor merely said, was responding to defense counsel's argument incorrectly. Defense counsel argued that there was absolutely zero DNA evidence in this case. And he said, well, there is one very statistically low probability match. Didn't argue that it meant one thing in particular, just that it existed. As we now know, that was incorrect. On his pants? When the judge said, pants or shoes? He said, I believe it was on the pants. I think that the objection and the trial court's admonition certainly notified the jury as to a dispute in the evidence. And the court told them that they were the ones who decide the evidence and the facts in this case. And so counsel could have determined that that was sufficient. So the State Court of Appeals said there was no, when they were looking at the, they issued a writ of habeas, they issued an alternative writ on habeas corpus, and they addressed the deficient, the IAC claim. Yes, Your Honor. And they said, well, there's no, we don't see any deficient performance here because there were several strategic reasons that could justify what the prosecutor did. But the magistrate judge found that there was deficient, you know, concluded that the State Court's ruling on that point was unreasonable. Yes, Your Honor. It went off on prejudice. Well, the district court or the magistrate found the State Court's determination unreasonable on deficient performance but reasonable under prejudice and properly denied the writ. It, we would submit that the magistrate was incorrect on the deficient performance prong. Certainly, counsel, as the State Court noted, counsel may have decided not to highlight the issue, making it seem as though their entire defense hinged on the fact that there was no DNA evidence. But he had nothing to lose. I mean, as the magistrate judge pointed out, he had absolutely nothing to lose by stressing that there's no evidence because the witness has testified. That's not true, Your Honor. He did have something to lose in that. What did he have to lose? His credibility going into a possible penalty phase. He had no way, as we argued in our briefs, he had no way of proving, he had just been overruled. He had no way of proving the correctness of his misstatement. The daily transcripts were poorly punctuated and probably led to this mistake. They could have gone back to the expert's testimony. Well, the trial court was not going to dictate to the jury what the facts were. That just was not going to happen. No, but looking at the transcripts doesn't dictate anything. It's what the witness has testified to. Yes, Your Honor. But at most, he would have, there could have been a readback. And as we noted, it was poorly punctuated and incorrect, or unclear, sufficiently unclear that on appeal, Mr. Manzano contacted the expert and had them draft a declaration in order to clarify what the transcripts were. So I don't believe they are as clear as counsel would like them to be. So when you get to the prejudice prong, as Judge Nelson alluded to with her question, why wasn't it prejudicial? There really is no evidence that said that, that points to Manzano as being the trigger guy. Yes, there was, Your Honor. There was. No physical evidence that shows he was the trigger guy. There was the bullet recovered from him that was fired by a 9mm. The 9mm bullets were fired from the garage. How does the fact that he had the bullet in his pelvis show that, demonstrate that he was the shooter? That he pulled the trigger? Because the, well, that he was the trigger man? Yes. Because the evidence was that the trigger man who came into the house was the one who got shot. The witness in the house said the... Shot in the back? I mean, it... In the right pelvis, or in the lower pelvis, yes, in the back. Okay. Well, we do have what, if the jury believed... There's no way to get over this fact, that the witness inside the house said the gunman in the house who fired the bullets that killed Mr. Hogwin was shot. And there was only one person who was shot, and that was Mr. Manzano. Unless there are any questions? Did she testify there was only one person in the house? Yes, she said one gunman came into the house and fired from the foot of the sofa. How did he get shot? By Mr. Estrada. Where was Estrada? In the garage. They came in through the garage where the grandfather, Mr. Garul, was working. I gather someplace in the record, was there a layout of the house, the inside of the house? I believe there was, Your Honor. Do you know what exhibit that was? I do not. But they came in through the garage, the garage door opened up, and then one came into the living room. So the other thing the Court of Appeal did was they pointed to the testimony of Mr. Regalado. Yes, Your Honor. Now, he was less than, you know, he was less than an upstanding witness. Yes, Your Honor. But with Mr. Regalado, it's important to remember that he was relaying the story as told to him by Mr. Manzano. He was not a precipient witness. So many of the inconsistencies with the physical evidence can be explained that he was relating the confession and not relating what he saw. His whole story about how he even had his conversation with Mr. Manzano was rather amazing. Well, it was all before the jury, and the jury made a credibility determination as to that. I understand. Unless there are any further questions, Your Honor. Okay. Thank you. I have three points I'd like to try to make, but I'll try to be fast. The first is that counsel said the state court did not find prosecutorial misconduct in this case, and that's wrong. The state court said, we agree with Manzano that a prosecutor commits misconduct, whereas here he misstates or mischaracterizes the evidence. And then it went on to find there was no objection. That was on the direct appeal. That was on direct appeal. Which is a different standard. It is, but I just wanted to clarify that the state court found misconduct. And in fact, in Eric Estrada's case, the court of appeal just this last May found that the same prosecutor committed very similar intentional misconduct when he falsely told the jury in closing that Eric Estrada's shoe size matched the other footprint. So this is a pattern for this prosecutor. I just want to make sure this is not some unintentional thing that happened, and the court has now twice found that he committed misconduct with respect to these trials. The second point that I want to make is counsel's argument that there was no way for trial counsel to prove what the testimony was. And certainly there was a typo at ER 728, but in that same expert's testimony, on the very next page, she very clearly says that all three of the victims were excluded as the other donor. So if counsel had objected again and had asked for a readback, they could have shown, based on the transcript itself, what the testimony actually was. And that's at excerpt page 729. And then the final thing that I want to correct is when my opponent here said that the witness said that the shooter was shot. That's not what the testimony was. The witness said, we saw one shooter, we covered our heads, we got down behind the couch, and then we felt a presence of a second person, maybe not. And then, once they're no longer watching, they heard somebody sound like they were dragging. Didn't say it was a shooter. So I just wanted to make that clear, what that testimony was. So let me ask you this. What happened to Mr. Estrada's case, just as a side note? He was charged, I think, in 2009, and tried and convicted of the same first-degree murder, second-degree murder. And his appeal, his conviction was affirmed in May 2006. So they were both charged as principals or as aiders and abettors, or how were they charged? I'm not quite sure. I haven't How was Mr. Manzano charged? He was charged as a principal. He was charged as a principal. Yes. Right. Straight up. I assume Mr. Estrada was charged as an aider and abettor. Okay. All right. Thank you, counsel. Thank you. Thank you. And we appreciate your arguments. The matter's submitted.
judges: D.W. Nelson, Paez, Bucklo